UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ORLANDO MCKNIGHT #575768      CIVIL ACTION NO. 20-cv-1090

VERSUS      CHIEF JUDGE HICKS

JERRY GOODWIN, ET AL      MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

Orlando McKnight ("Plaintiff") is a self-represented prisoner who was once housed at the David Wade Correctional Center. He filed this civil rights action against several David Wade officials based on a variety of claims. Before the court is the Defendants' Motion for Summary Judgement (Doc. 55) that challenges the claims both on the merits and, with respect to several claims, for failure to exhaust administrative remedies. For the reasons that follow, it is recommended that the motion be granted.

### Attendance at Cousin's Funeral

Defendants admit that Plaintiff did exhaust his administrative remedies with respect to a claim that he should have been allowed to attend the funeral of a family member. Plaintiff filed a grievance and complained that the chaplain had informed him of the death of an "intermediate family member," but Plaintiff was denied a request to attend the funeral. Plaintiff, who alleges that he is a member of the Rastafari faith, argued that this denied him the right to participate in a ceremonial rite of his religion.

A prison official wrote in the grievance response that Plaintiff and his mother confirmed that the deceased was Plaintiff's cousin. The prison manual stated that offenders may be allowed to attend funerals or bedside visits of immediate family members, which are defined as father, mother, brother, sister, spouse, and children. Cousins are not listed. The grievance was denied at all levels based on this rationale.

Plaintiff presents the claim here as a violation of his religious rights. Many courts have held that there is no federal statutory or constitutional right of any kind to attend the funeral of a family member. Wilson v. East Carroll Detention Center, 2012 WL 602171 (W.D. La. 2012) (denial of prisoner's request to attend his mother's funeral did not violate a constitutional right); Williams v. Terrell, 2011 WL 6181446 (W.D. La. 2011) ("A prisoner simply has no federal statutory or constitutional right to attend a relative's funeral."); Alphonse v. Louisiana Department of Public Safety, 2018 WL 3979854 (E.D. La. 2018) ("an inmate clearly has no federal statutory or constitutional right to attend a relative's funeral"); and Billizone v. Jefferson Parish Correctional Center, 2015 WL 966149, *9 (E.D. La. 2015) ("It is beyond cavil that a prisoner has no federal statutory or constitutional right to attend a relative's funeral").

Defendants also assert the defense of qualified immunity, which shields officials from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. Buehler v. Dear, 27 F.4th 969, 981 (5th Cir. 2022). The plaintiff has the burden of showing that the unlawfulness of the Defendants' conduct was clearly established at the time it occurred. He need not identify a case directly on point to make such a showing, but

he must point to authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful. Id. Plaintiff points to no clearly established law that would mandate prison officials allow a Rastafarian to attend his cousin's funeral. Thus, the Defendants' qualified immunity defense also precludes relief on this claim. Summary judgment on this claim should be granted.

**Remaining Claims; Exhaustion Defense**

    **A. Plaintiff's Claims**

Plaintiff filed an original and two amended complaints, and his claims were summarized in a prior order. Doc. 19. Plaintiff alleged, in additional to his funeral attendance claim, that two officers demanded that he withdraw a grievance and interrogated him about his religious beliefs and practices. Plaintiff was later written up for contraband and placed in solitary confinement. He alleged that he was falsely convicted of possessing alcohol based on a bottle of honey, to which he added water, with no test results of the contents. Plaintiff also alleged that Warden Goodwin told him that he needed to pull his hair loose or cut it. Plaintiff responded that the chaplain had given him a religious exemption from cutting his hair and allowing the formation of locs. Goodwin allegedly said that he did not care about Plaintiff's religious beliefs, but Plaintiff does not allege that Goodwin forced him to cut his hair.

Plaintiff alleged that he was moved to a more restrictive cell block several days after he attended a meeting regarding the Rastafari religion. He alleged that prison staff members discouraged Rastas from practicing their religion, that Christian inmate counsel no longer visited the cell blocks even though his Rastafari beliefs are deeply influenced by

the Judeo-Christian religion, and that a nurse denied medical treatment because Plaintiff's lacto-vegetarian diet was a religious choice and not for medical reasons. Plaintiff also complained that his purchase of vegetarian meals and vitamins from the canteen was restricted. Finally, Plaintiff alleged that he saw prison psychiatrist Dr. Seal for mental health matters such as extreme paranoia and depression. Dr. Seal placed him on medication, but Plaintiff complained that his mental health conditions required more than medication.

### B. The Exhaustion Requirement

Defendants argue that all of Plaintiffs' remaining claims are subject to dismissal because Plaintiff did not exhaust his administrative remedies before he filed suit. The defense is based on the provision in 42 U.S.C. § 1997e(a) that provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The statute is interpreted broadly and applies to a wide variety of claims related to prison conditions or events. Porter v. Nussle, 122 S.Ct. 983 (2002); Harris v. Hegmann, 198 F.3d 153 (5th Cir. 1999).

The statute requires proper exhaustion in accordance with prison or jail procedures. Woodford v. Ngo, 126 S.Ct. 2378 (2006). The grievance procedure for state prisoners is set forth in Louisiana Administrative Code, Title 22, Part I, § 325. It allows an inmate to commence the grievance process by writing a letter or filing a grievance with the warden that sets out the basis for the prisoner's claim and the relief he seeks. A grievance may be accepted (and addressed on the merits) or rejected for various procedural reasons. If the

grievance is accepted, it is first ruled upon by the warden or his designee. An inmate who is dissatisfied with the first step response may appeal to the Secretary of the Department of Public Safety and Corrections, who issues the final decision. A prisoner who is not satisfied with that final response may file suit in a district court.

### C. Analysis

The purposes of the exhaustion requirement are to "give an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and to allow for claim resolution in proceedings before an agency because it is faster and more economical than litigation in federal court. Bisby v. Garza, 342 Fed. Appx. 969, 971 (5th Cir. 2009), citing Woodford. Thus, a grievance exhausts only claims reasonably within its scope. Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004) (grievance must provide administrators with a "fair opportunity under the circumstances to address the problem that will later form the basis of the suit"). The level of detail required in a grievance is based on the prison's requirements. Jones v. Bock, 127 S.Ct. 910, 923 (2007).

Defendants submit records of Plaintiff's grievance history. He filed three grievances in 2017, but none of them relate to the allegations of this 2020 civil action. Plaintiff complained of the lack of privacy in the prison showers, that he was placed in disciplinary extended lockdown upon his arrival from the Louisiana State Penitentiary, and that a staff member opened and read his legal correspondence. Doc. 55, Exhibits 2-4. Nothing in those grievances exhausted any claims presented in this civil action.

Plaintiff next filed a grievance regarding his cousin's funeral; that claim was addressed above on the merits. He then filed grievance DWCC-2020-0331 and complained about difficulty maintaining a proper religious diet with the food available in the prison. He stated that he purchased kosher meals in the canteen, but they often included noodles made with eggs, which eliminated them from his diet. He contended that he was suffering a nutrition deficiency for lack of a properly balanced vegetarian meals. The grievance was accepted on June 3, 2020, the unit head responded in July 2020, and the secretary issued a decision concurring with that resolution in September 2020. Exhibit 6.

Some of what Plaintiff alleged in his judicial complaint may be within the scope of that grievance, but Plaintiff did not exhaust his administrative remedies with respect to such claims before he filed suit. Section 1997e "plainly requires that administrative remedies be exhausted *before* the filing of a § 1983 suit, rather than while the action is pending." Wendell v. Asher, 162 F.3d 887, 890-91 (5th Cir. 1999) (unexhausted claim must be dismissed even though exhausted days after suit was filed.).

Plaintiff dated his judicial complaint August 17, 2020, and it was received and filed by the clerk of court on August 20, 2020. He did not complete the administrative process with respect to this grievance until the following month, September 2020. Plaintiff did file amended complaints, which largely repeated his original claims, after he completed the exhaustion process, but "[a]n amended complaint will not typically cure the failure to exhaust administrative remedies prior to initially filing suit." Smith v. Olsen, 455 Fed. Appx 513, 515 (5th Cir. 2011). Defendants' exhaustion defense with respect to claims based on this grievance has merit.

Plaintiff filed grievance DWCC 2020-0754 in November 2020 to complain about administrative segregation, disciplinary detention, and lockdown policies. Exhibit 7. That grievance was not filed until almost three months after this civil action was commenced, so nothing in that grievance could properly exhaust a claim that could be submitted in this case. Defendants' exhaustion defense related to any claims presented in this grievance also has merit.

Plaintiff filed a memorandum in opposition (Doc. 60) to Defendants' motion for summary judgment. He argued that his claims should not be dismissed based on the exhaustion defense because staff at David Wade have an "active history of receiving Administrative Remedy Procedures and totally disregarding them" as they have done "numerous times" to Plaintiff. That is insufficient to defeat the exhaustion defense.

The exhaustion obligation of Section 1997e(a) is mandatory. There are no "futility or other [judicially created] exceptions [to the] statutory exhaustion requirement …." Valentine v. Collier, 956 F.3d 797, 804 (5th Cir. 2020), quoting Booth v. Churner, 121 S.Ct. 1819 n. 6 (2001). But exhaustion is not required if the remedy is not "available," and one example is if administrative officials have apparent authority to provide relief but decline ever to exercise it. Valentine, 956 F.3d at 804, citing Ross v. Blake, 136 S.Ct. 1850, 1859-60 (2016).

The record defeats Plaintiff's suggestion that David Wade officials "totally disregard" his grievances or that administrative remedies were not available. The exhibits cited above include detailed responses by prison officials that reflect research and investigation into the particular complaints, followed by reasoned explanations for the

actions taken by prison officials. Plaintiff succeeded in exhausting a number of claims, but they either had nothing to do with the claims set forth in the complaint or were not completed until after this suit was filed. Thus, Plaintiff's futility argument lacks merit.

Plaintiff also complains that his ability to respond to the motion for summary judgment was thwarted by an allegedly illegal confiscation of "sensitive legal papers" pertaining to this action, with the only paper identified being an amended complaint. Plaintiff's multiple and lengthy submissions demonstrate that he has had no difficulty in accessing the court throughout these proceedings, and he offers no explanation as to how the draft or copy of an amended complaint would assist him in responding to the current motion. The unsupported claim of confiscation of legal papers does not prevent summary judgment for Defendants.

**Conclusion**

Defendants are entitled to dismissal with prejudice of Plaintiff's claim that he was denied attendance at his cousin's funeral. The claim lacks merit and is subject to the qualified immunity defense. Defendants are entitled to dismissal without prejudice of all remaining claims for failure to exhaust administrative remedies. Bargher v. White, 928 F.3d 439, 447 (5th Cir. 2019) ("failure to exhaust ... warrants dismissal without prejudice.").

Accordingly,

It is recommended that Defendants' Motion for Summary Judgment (Doc. 55) be granted by dismissing with prejudice Plaintiff's claim that he was not allowed to attend his

cousin's funeral and dismissing without prejudice all remaining claims against all defendants for failure to exhaust administrative remedies prior to bringing this civil action.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 31st day of October, 2022.

Mark L. Hornsby
U.S. Magistrate Judge